# CHARLESTON.

PAUL HAMMOND, *an Infant Who Sues by Lon Hammond, His Next Friend v.* THE THACKER COAL & COKE COMPANY

(No. 6080)

Submitted March 7, 1928.     Decided April 17, 1928.

AUTOMOBILES—*Instruction Susceptible of Two Constructions, One of Which is Erroneous and Possibly Misleading, is Improper; Instruction Not Clearly Presenting Theory of Actual or Presumed Notice to Truck Owner, Sued for Injury to Boy, Permitted to Ride by Driver, Held Defective.*

An instruction which is susceptible of two constructions, one of which is erroneous, and which may, therefore, mislead the jury, should not be given.

(Motor Vehicles, 42 C. J. § 1142.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Mingo County.

Action by Paul Hammond, an infant, by Lon Hammond, his next friend, against the Thacker Coal & Coke Company. Judgment for plaintiff, and defendant brings error.

> *Judgment reversed; verdict set aside;*
> *new trial awarded.*

*Goodykoontz & Slaven* and *Chlide Nelms,* for plaintiff in error.

*H. W. Houston,* for defendant in error.

LITZ, JUDGE:

This writ was awarded upon the application of the defendant, Thacker Coal & Coke Company, to a judgment of $9,000.00 against it in favor of the plaintiff, Paul Hammond, for personal injuries sustained by him while riding on its delivery truck, January 20, 1923.

The defendant owns and operates three coal mining plants within the vicinity of Thacker, Mingo county. It also conducts in connection with its mining business a general store for the sale of merchandise to its employees. At the time of and prior to the accident the defendant used a Ford truck, driven by Peyton Gregory, in conveying merchandise from the railroad station to its store, near by, and in delivering merchandise from the store to the homes of its employees. According to the testimony of the plaintiff, who was at the time of the accident nearly eleven years of age, and his brother, Tie, then thirteen, Tie and a smaller brother, James, were riding on the seat of the truck with the driver, the plaintiff was standing on the stirrup holding to the end of the seat next to the driver, and Fred Smith, another boy, was sitting in the bed, en route from the store to distribute a load of merchandise at the homes of employees, when the driver by shifting gear from low to high caused the truck to "jerk" and throw the plaintiff in front of the left rear wheel which passed over his head and face, inflicting upon him serious and permanent injury; within the brief period of three or four weeks the Hammond family had resided in

the community, (the father being an employee of defendant), Paul had ridden on the truck seven or eight times and his brother, Tie, ten or twelve times, assisting the driver in removing merchandise from the railroad station to the store and in delivering merchandise from the store to the employees of defendant; and for these services they had received candy and small sums of money from the driver and candy from D. E. Lay, store manager of defendant. Fred Smith (fourteen years old at the time of the accident, but small of stature), who testified on behalf of the defendant, states that he had previously ridden on the truck while assisting the driver in the conveyance and delivery of merchandise, had assisted in loading the truck on the occasion of the accident, and was riding at that time for the purpose of assisting in the distribution of the load of merchandise among the employees of the defendant. The driver, another witness for the defendant, admits he had employed Fred Smith (who also had lived a very short time in the neighborhood), about half a dozen times on previous occasions' to assist in like service for which he paid him. He states, as a reason for employing the Smith boy: ''Well, there would be times that I would be late on account of the train being late with the express, and it would make me late getting through with my work and that is why I would get him to help me to get through my work.'' W. A. Wilson, general superintendent of defendant, who lived at Huntington and visited the operations once a week (the remainder of his time being employed in supervising numerous coal mining plants in McDowell county) testified that he had observed boys jumping on the truck, and for that reason instructed the driver not to permit any boy to ride on it. The mother of the plaintiff also stated that she saw boys riding on the truck prior to the accident. The driver and Fred Smith deny that the plaintiff or either of his brothers were riding on the truck at the time of the accident, and express the opinion that the plaintiff was injured by attempting to jump on without their knowledge. The driver also denies that he had ever employed the plaintiff or his brother Tie to assist him in delivering merchandise or permitted either of them to ride on the truck, but admits

that he did not obey the instructions of the general superintendent in respect of boys riding on the truck. The assistant superintendent, living at the mines and therefore in a better position than the general superintendent to know whether or not the driver had obeyed the instructions of the latter, although in court at the time of the trial, failed to testify.

The plaintiff seeks to recover on two grounds. (1) That the owner of an automobile, operated by his servant, is liable for injury to children, through the negligence of the driver, while riding on the vehicle by his permission. (2) That the plaintiff was on the truck with the acquiescence of the defendant.

*Christie* v. *Mitchell*, 93 W. Va. 200, holds that "a master is not liable for personal injuries sustained by one invited by his servant to ride on his truck without actual or *ostensible* authority to do so, when not acting within the scope of his duties", except where the injuries complained of result from the wanton, wilful and reckless negligence of the servant in the operation of the vehicle. In the opinion it is said: "The general rule, according to the great weight of authority, including our own decisions, is that a master is not liable for personal injuries sustained by one invited to ride on a vehicle by his servant in charge of it without actual or *ostensible* authority to do so, and where not acting within the scope of his duties." There was not, however, in that case as in this, evidence tending to prove a practice on the part of the servant of permitting children to ride on the vehicle.

The defendant, relying upon the rule enunciated in *Christie* v. *Mitchell*, cited, contends that the trial court should have directed a verdict in its behalf. Instruction No. 3 for the defendant follows:

> "The court instructs the jury that unless the jury believes from the evidence that the defendant's driver of the truck invited the plaintiff to ride on the truck, or had knowledge of the fact that he was on the truck at the time of the alleged injury, and unless the jury further believe from the evi-

dence that the said injury was due to the wanton, wilful and reckless conduct of the driver, then the jury shall find for the defendant."

Plaintiff's instruction No. 1 reads:

"The court instructs you that if you believe from the evidence that the plaintiff was riding upon the running board of a motor truck of the defendant company, upon the invitation of the driver thereof and for the purpose of assisting him in the discharge of his duties as an employee of the defendant, and with the knowledge and acquiescence of the said defendant company, then the court instructs you that it became and was the duty of the defendant, through its said employee, the driver of the said truck, to use due and reasonable care not to injure the plaintiff. And if you believe from the evidence that the driver of said truck did not use such due and reasonable care not to injure the plaintiff, but drove and operated the same in such a wilful, wanton and reckless manner as to cause the plaintiff, while he was in the exercise of such care for his own safety as was to be expected from one of his age, to be thrown from said truck and under the wheels thereof, causing the said wheels to pass over him, resulting in his injury, then the court instructs you that the defendant company is liable, and you should find for the plaintiff."

These were the only instructions presenting any basis for negligence chargeable to the defendant. The first, as will be seen, conditions the right of plaintiff to recover upon proof that the injury was due to the wanton, wilful and reckless conduct of the driver, and the second beginning with the statement that "if the plaintiff was on the truck with the knowledge and acquiescence" of the defendant, it then became its duty, through the driver, to use due and reasonable care to avoid injuring the plaintiff, ends by predicating liability upon wilful, wanton and reckless operation of the truck by the servant.

In view of the holding in *Christie* v. *Mitchell, supra,* we do not think the evidence warranted submission of the case to

the jury on the theory of wanton, wilful and reckless negligence of the driver. In that case the plaintiff's intestate, a boy twelve years of age, while standing on the step of a moving truck holding to the bed, fell or was thrown to the ground by the movement of the vehicle and crushed under the wheel. Although the evidence for the plaintiff in the case tended to prove that the truck was being driven over a rough and uneven street at a considerable rate of speed, the court held that wilful, wanton and reckless driving on the part of the driver had not been established. In this case the road was comparatively smooth and the car was moving at an ordinary rate of speed. The driver says he shifted the gear in the usual manner.

The only theory upon which the plaintiff would be entitled to recover is that of presumed notice to the defendant of the driver's practice of permitting boys, assisting him, to ride on the truck. The master is chargeable with liability for unauthorized acts of his servant, if he has actual notice of such acts or they have been committed so frequently and under such circumstances as to justify the presumption of notice. This theory was not clearly presented to the jury. "An instruction which is susceptible of two constructions, one of which is erroneous, and which may, therefore, mislead the jury, should not be given." *Virginian Central R. Co.* v. *Sanger,* 15 Gratt. 230; *Gas Co.* v. *Wheeling,* 8 W. Va. 320.

The judgment will be reversed, the verdict set aside, and a new trial awarded.

*Judgment reversed; verdict set aside;*
*new trial awarded.*