DON SHRIMPLIN *v.* SIMMONS AUTO COMPANY, INC.

(No. 9010)

Submitted April 9, 1940. Decided April 23, 1940.

*Grover F. Hedges* and *Wm. Bruce Hoff,* for plaintiff in error.

*Harper & Baker,* for defendant in error.

Fox, Judge:

Don Shrimplin, plaintiff below and plaintiff in error in this Court, suffered injuries in an automobile accident at the intersection of state routes Nos. 5 and 16, near Arnoldsburg, in Calhoun County, on May 26, 1938, and prosecutes this action for damages therefor against the Simmons Auto Company, a corporation. The car in which he was riding at the time of the accident was owned by the defendant, and was driven by D. W. Chenoweth, who was employed by the defendant in its business of selling new

and used automobiles and trucks, refrigerators, and radios. Upon completion of the plaintiff's case, the defendant moved the court to strike out all of the evidence of the plaintiff and direct the jury to return a verdict for it upon the following grounds: (1) That the evidence did not establish any liability against the defendant; (2) That the evidence failed to establish recoverable negligence against the defendant; (3) That the physical facts developed by plaintiff's evidence established the negligence of the driver of the other automobile involved in the accident as the proximate cause of plaintiff's injury; and, (4) That the evidence of the plaintiff was introduced upon a wholly different theory than that alleged in the declaration and was inconsistent therewith. The court sustained the motion, to which action the plaintiff prosecutes this writ of error.

It will be observed that three questions are presented on the record:

> (1) Whether the evidence of the plaintiff was properly admitted under the allegations of the declaration;
> (2) Whether the driver of defendant's car was guilty of such negligence as entitles the plaintiff to recover; and,
> (3) Even admitting the negligence of the driver of defendant's car, did such negligence, under the circumstances of this case, create liability against the defendant.

On the first question, as to admissibility of the plaintiff's evidence under the declaration, the record shows that the original declaration contained three counts, in the first of which it is alleged that the agent and employee of the defendant invited the plaintiff to ride and drive in defendant's automobile "for the mutual pleasure and entertainment of said plaintiff, and said defendant." In the second count the allegation is that the agent and employee of the defendant "invited and requested the plaintiff to ride and drive in defendant's said automobile from near the town of Minnora to the City of Spencer"; and in the third count the allegation is that "the plaintiff accepted

the invitation of the said defendant, by and through its servant, agent and employee, to ride with him in said automobile upon and over certain roads and highways in the County of Calhoun * * *". During the progress of the trial, when certain testimony was introduced tending to show that Chenoweth, the driver of the defendant's automobile, was engaged in work within the scope of his employment, and in the interest of his employer, objection was made to such testimony on the ground that the only allegation in the declaration bearing upon the business of defendant in connection with the invitation to the plaintiff was "the mutual pleasure and entertainment of the plaintiff and said defendant". The court sustained the objection to the evidence proposed to be introduced, whereupon the plaintiff asked leave to amend the second and third counts of his declaration to make those counts charge that the invitation extended by the defendant's agent to the plaintiff was for the purpose of "advancing the business interests" of the defendant. The trial court permitted these amendments and the plaintiff introduced evidence tending to show that Chenoweth, the defendant's agent, was engaged in company business at the time of the accident. It may be doubted whether the propriety of the court's action arises upon this record, there being no cross-assignment of error by the defendant; but, waiving this doubt, we think the court properly permitted the amendments to the declaration, after which the evidence with respect to the purpose for which the plaintiff was invited to ride in defendant's car was properly admitted. Code, 56-4-24, gives to a trial court wide discretion in the matter of amendments to a declaration or other pleading. We do not believe that such discretion was abused in this case, and we think the ends of justice were promoted by permitting such amendments, and in so doing laying the basis for the admission of the plaintiff's evidence.

Whether or not the driver of defendant's car was guilty of any character of negligence, which was the proximate cause of the plaintiff's injuries, was, we think, a jury question. Chenoweth drove defendant's car northward over route 16 to its intersection with a highway running

east and west, known as state route 5 and U. S. routes 33 and 119 (hereinafter referred to as route 5). At this point he attempted to make a left turn into route 5 to proceed west in the direction of Arnoldsburg and collided with a car driven by Mrs. Phyllis Ross, travelling east on route 5, and just entering the intersection to the left of Chenoweth. Under Code, 17-8-10, as it existed at the time of the accident, the driver of a vehicle had the right of way over the driver of another vehicle approaching from the left of an intersecting highway, and the amendment, Chap. 114, Acts, 1939, enacting a provision in the same section that where a stop sign is erected it shall govern traffic movements, does not affect this decision. In *Collar* v. *McMullin,* 107 W. Va. 440, 148 S. E. 496, it was held that it was prejudicial error to refuse an instruction based upon this statute. The rule governing the right of way at intersections, as expressed in our statute, is upheld in *Wade* v. *Schneider,* 63 Ohio App. 24, 25 N. E. (2d) 290. Chenoweth, driving along route 16, near the point of the intersection with route 5, was on the left side of the road, whereas, it is contended that he should have been on his right side. It is obvious that to reach a proper position on route 5 to go in the direction of Arnoldsburg, he would be compelled to cross the path of Mrs. Ross's car, but it is contended he should have done this in an approximately direct course, whereas, the evidence shows that at the time of the collision, he was near the center of the road and on his left side some eighty-one feet beyond the intersection; so that a question arises as to whether, assuming that he had the right of way, he was negligent in not crossing to the proper side of route 5 in a different manner. What occurred at the actual time of the collision is not so important, because apparently each party saw there was the possibility of a collision, did exactly the wrong thing, and instead of avoiding each other turned their cars toward the same point and the collision resulted. Persons are not held to strict accountability for their acts in times of stress. On the whole we are disposed to think that, on the record presented, the court would not have been

warranted in taking the case from the jury upon the question of the negligence of the defendant's agent at the time of the accident.

The question remains as to defendant's liability in this action, conceding for the purpose of discussion that Chenoweth's negligence was the proximate cause of the accident. The question of the liability of an employer for injuries sustained by an invitee of a servant, occasioned by the negligence of the servant in operating a motor vehicle, is one which has greatly disturbed the courts, and it cannot be said that the authorities are in harmony. Indeed, the subject is one where the facts of each case usually determine the decision, and, therefore, no fixed rule of law can be established. However, the decisions of this Court have established two rules for our guidance:

> (1) The owner of a motor vehicle operated by a servant is not liable for personal injuries sustained by one invited therein by the servant, through lack of due care on the part of the servant, when the servant is without actual, ostensible, or implied authority to extend the invitation and when not acting within the scope of his duties. *Christie* v. *Mitchell,* 93 W. Va. 200, 116 S. E. 715; *Collar* v. *McMullin,* 107 W. Va. 645, 150 S. E. 2.
>
> (2) But even without such authority, the reckless, wilful and wanton negligence of the servant, acting within the general scope of his employment, is attributed to the master under the doctrine of *respondeat superior. Christie* v. *Mitchell, supra; Todorobak* v. *McSurley,* 107 W. Va. 372, 148 S. E. 323.

To these rules has been added a lucid and exhaustive discussion of the subject in *Cochran* v. *Michaels,* 110 W. Va. 127, 157 S. E. 173, wherein the term "scope of employment" is discussed and in which it is held that "whether an act by a servant is within the scope of his employment is determined by the relation which the act bears to the employment"; and "an act specifically or impliedly directed by the master, or any conduct which is an ordinary and natural incident or result of that act is within the scope of the employment."

It is not contended that the cases cited bear directly upon the issue presented herein, but we cite them to show the general rule, and its application to the facts of this case, bearing upon the authority of Chenoweth, the defendant's agent, to invite the plaintiff into the defendant's car, and the extent of the defendant's responsibility for the injuries sustained by plaintiff while riding in its car under such invitation. It is now necessary to detail the facts bearing upon this point.

As stated, Chenoweth was employed as a salesman for defendant. His compensation was twelve dollars per week and three per cent commission on sales. He was permitted to use cars owned by the defendant and had broad authority with respect to hunting up sales prospects and in negotiating sales to persons already contacted by the defendant. On May 26, 1938, he left Spencer for the purpose of visiting a man by the name of Hall, who resided on a dirt road in the vicinity of Arnoldsburg, in an attempt to get his signature to a sales contract on a refrigerator. Arnoldsburg is about fifteen miles distant from Spencer. It was raining in the morning of that day, and when Chenoweth reached Arnoldsburg he decided he could not visit Hall, and he then drove his car up beyond Arnoldsburg to the intersection of route 16 with route 5, then up route 16, a distance of some ten miles, stopping to see another refrigerator prospect, but finally going to the lumber camp operated by the plaintiff, where he spent from one to two hours. It appears that the plaintiff was the owner of a used truck which he wanted to sell or trade and on which he had placed a price of three hundred dollars. He had left the truck at Spencer in a garage and had authorized the Simmons Auto Company to sell the same for three hundred dollars, and had given them the key to the garage in which it was stored. It was understood that he desired to trade the truck for a used automobile. The automobile driven by Chenoweth on the day of the accident was a used, 1935 Dodge coupe. While at the plaintiff's camp, something was said by him indicating

that he proposed to call his wife in Spencer and ask her to come after him. Chenoweth then suggested that the plaintiff "ride in the car with me, into town, that we might trade on this particular car that I was driving that day". The plaintiff accepted his invitation, and they got in the automobile and drove to Arnoldsburg, where they had lunch. On the way the question of a trade came up, and plaintiff told Chenoweth he would trade even, Chenoweth replying that he would have to get four hundred dollars out of the car he was then driving. What plaintiff's reply to that suggestion was the record does not show, and so far as disclosed thereby, the matter of any trade between the parties with respect of this, or any other automobile, was not further discussed during the day. After lunch, Chenoweth stated that he wanted to see a man by the name of Rhodes, another sales prospect, who lived some eight miles from Arnoldsburg and in an opposite direction from Spencer. Chenoweth and plaintiff got in the Dodge automobile and drove to the Rhodes farm. This, of course, was with his knowledge, and he made no objection thereto, although he knew that it was a departure from the purpose of his invitation. On their way there, they stopped and talked with a Miss Price, who was understood to be a prospective purchaser of an automobile, and Chenoweth invited her to take a ride in the car, which invitation she declined, but on the return trip, on being invited to ride in the automobile for demonstration purposes, she got into the automobile with Chenoweth and plaintiff, and they returned to the intersection of route 16, then drove on 16 to Ivydale, in Clay County, and up the Elk River to Duck, at the lower edge of Braxton County, Miss Price driving the car a part of the time. They returned to Ivydale and from there to the intersection where the accident occurred, and, having spent all of the afternoon in these various trips, making numerous stops on the way, reached the intersection about dusk.

Under the authority cited, we think it quite clear that if the accident in which plaintiff was injured had occurred on the route from plaintiff's lumber operation to Spencer, or on any reasonable side trip along the route, the de-

fendant would, under the circumstances developed in the record, have been held to the exercise of due care for the plaintiff's safety; and if there had been lack of such due care, the defendant could have been held liable for the injuries sustained. But this is not the situation before us. Presumably, Chenoweth's invitation to the plaintiff was extended in an effort to secure an opportunity to discuss with him a trade of the automobile he was then driving. That discussion was held on the way to Arnoldsburg. Evidently no agreement was reached because in the afternoon Chenoweth, with plaintiff accompanying him, demonstrated the car to another prospective purchaser; Miss Price. Clearly, in demonstrating and attempting to sell this car to Miss Price, Chenoweth was not then engaged in any effort to trade the same car to the plaintiff, and there would seem to be no basis upon which it can reasonably be contended that in carrying the plaintiff over a route entirely different from that to which his earlier invitation referred the liability of the defendant for the exercise of due care still continued. True, Chenoweth was continuously in the employ of the defendant, but he was not exercising that employment during the afternoon in any effort to make a sale to or trade with the plaintiff. We think there must be some limitation upon the authority of a servant, even while within the scope of his employment, in inviting people to ride in an automobile under his control, when such invitation has no connection with the business in which he is then engaged. An invitation, proper at the time made, cannot be held to continue long after the consummation of the purpose which prompted it. Any new invitation must rest upon the circumstances then existing. We are of opinion that when the plaintiff accompanied Chenoweth during the afternoon of May 26, when he was engaged in business of his company with which plaintiff was in no way associated, he no longer had the protection contemplated by the original invitation, that of the obligation to exercise due care; and further that the defendant could only be held liable where

there was a showing of reckless, wanton, wilful negligence. There is no such showing on this record, nor any contention that there was that character of negligence, and we, therefore, hold that the trial court was warranted in striking out the plaintiff's evidence and directing a verdict for the defendant upon the ground that, on this record, no liability rested upon the defendant for the conduct of Chenoweth, even though there may have been a lack of care on his part.

The judgment of the circuit court is affirmed.

*Affirmed.*