JOHN M. MORRIS ET UX. *v.* CALVIN COOLIDGE PEACE

[No. 353, September Term, 1971.]

*Decided March 21, 1972.*

The cause was argued before ANDERSON, ORTH and THOMPSON, JJ.

*Gary R. Alexander,* with whom were *Vernon G. Haas* and *Giordano, Alexander, Haas & Mahoney* on the brief, for appellants.

*Edward B. Layne, Jr.,* with whom were *McInerney, Layne & McCormick* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

The Court of Appeals has recently and repeatedly held that when an accident occurs in another state, the substantive rights of the parties, even though all are domiciled in Maryland, are determined by the law of the place of the injury. *Cook v. Pryor,* 251 Md. 41, 246 A. 2d 271; *White v. King,* 244 Md. 348, 352, 223 A. 2d 763. We are primarily concerned in the instant case with whether or not the law of Virginia was properly invoked and properly interpreted. The particular contentions will be set forth hereinafter.

In Fairfax County, Virginia, March 18, 1967 was a

clear, sunny day and visibility was good. At approximately 4:00 P.M., the plaintiff/appellant, John M. Morris, was operating a Dodge panel-truck in a northerly direction on U.S. Route 1. The defendant/appellee, Calvin Coolidge Peace, was operating a 1963 red Ford automobile in an easterly direction on Frye Road. The appellee intended to turn left onto U.S. 1 and travel in a northerly direction. At the time of the accident, traffic on Frye Road was controlled by a stop sign. The major arterial highway, U.S. Route 1 had three lanes southbound and two lanes northbound. Frye Road terminated at Route 1 and consisted of one eastbound and one westbound lane.

The appellee, Mr. Peace, testified that in obedience to the stop sign he came to a full stop; he looked to his left and right, observed a break in traffic, and concluded that he had sufficient time to enter Route 1 and make his left turn. He testified that he gave no turn signals, and prior to the impact did not again look to his right; he looked only straight ahead and concentrated on making a left turn into the nearest northbound lane of traffic. He testified that he had almost completed the turn and that he had "about ten degrees to be straight" when his automobile was struck on the right front wheel and bumper area by the vehicle driven by the appellant, John M. Morris. The two vehicles veered from each other with appellants' vehicle proceeding in a northeasterly direction onto the east shoulder of Route 1 and appellee's vehicle proceeding in a counterclockwise fashion across the center line of U.S. Route 1, north of the intersection into the southbound lanes colliding approximately head on with a southbound vehicle operated by a Sgt. Ross.

Appellee, Mr. Peace, testified that prior to the impact his maximum speed was twenty (20) miles per hour. In a conversation at the scene of the accident, both the appellant-driver and the appellee acknowledged they had not seen each other until immediately prior to the collision, and the appellant-driver, according to appellee, stated his attention was distracted by a vehicle in a parking lot on his right that appeared to be attempting to enter the highway.

Lenia Miller, who was a passenger in the Ross automobile, testified that she saw the appellee's automobile pause and proceed into the intersection at a relatively fast pace. She testified that the vehicle was stopped for only a few seconds and did not thereafter stop or slow down prior to the collision. She said that after the appellee left the stop sign, she remarked to the driver of her vehicle, "look at that fool, he is going to hit that truck." She watched as the appellee's automobile crossed the southbound lanes of U.S. 1, entered the northbound fast lane and collided with the appellants' vehicle. The impact forced the appellee's vehicle back into the southbound lane where it collided with the automobile in which Mrs. Miller was a passenger.

The appellant John Morris testified that he entered U.S. Route 1 approximately one and one-half blocks or 170 feet south of the intersection with Frye Road. He stated he was traveling approximately 35 miles-per-hour, or 10 miles below the 45 mile-per-hour posted speed limit, and that due to the heavy traffic proceeding south on U.S. 1, he did not see the appellee's automobile until it had reached the center of U.S. 1. He had entered U.S. Route 1 from Green Leaf Street in an oblique fashion, proceeding northward and into the inside lane. He had done so because the automobile located on the parking lot was "practically in the roadway" facing southwest. At the time of the accident Morris' truck was straddling the two northbound lanes, "coming around" the vehicle on his right. He further testified that other than observing, "out of the corner" of his eye the automobile in the parking lot, he was looking ahead at all times.

Mrs. Mary Louise Peace, wife of appellee, testified that she was a passenger in the right front seat of her husband's automobile. She and her husband had commented on the extraordinarily heavy traffic prior to the time he pulled out. She stated after waiting "quite a while," the opportunity appeared and her husband pulled out and began making his turn. She did not see the appellants' vehicle before or after the collision.

As a result of injuries sustained in the accident, appellant and his wife sued the appellee for personal injuries.

### I Judicial Notice of Foreign Law

At common law, in cases controlled by foreign law, it was presumed that the foreign law was the same as the local law unless one of the parties specially pled and proved the foreign law. *Mandru v. Ashby*, 108 Md. 693, 71 A. 312. In 1939 Maryland adopted what is known as "The Uniform Judicial Notice of Foreign Law Act" and which is now incorporated into Md. Code, Art. 35, § 47 to § 50, the latter section reading as follows:

> "§ 50. Evidence presented by parties on notice to adverse parties.
>
> Any party may also present to the trial court any admissible evidence of such laws, but, to enable a party to offer evidence of the law in another jurisdiction or to ask that judicial notice be taken thereof, reasonable notice shall be given to the adverse parties either in the pleadings or otherwise."

Appellants contend the trial judge was not required to apply the foreign law because of the tardiness of the appellee in filing formal notice of his intention to rely on Virginia law. It appears that the notice was actually filed in the case only one day prior to trial, but it was stipulated that the appellants' counsel was given notice by telephone of the appellee's intention to file formal notice, one week prior to the trial. In denying the appellants' request that the case be tried under the laws of Maryland rather than the laws of Virginia, the trial judge noted that appellants' declaration referred to the violation of the traffic regulations of the Commonwealth of Virginia. The trial judge also informed the appellants if they were surprised by his decision to apply the Virginia law, he would give favorable consideration to a motion for continuance.

Under these circumstances we see no abuse of discretion. Although the language in the declaration would not be sufficient to require the court to invoke the Virginia law, *Wilson v. Dailey,* 191 Md. 472, 476, 62 A. 2d 284, that is no reason why it should not be considered in determining whether or not the formal notice was a reasonable notice under the statute. The offer of the trial judge to continue the case would be sufficient to put the appellants in a position where they could not now, after they know the result of the trial, be heard to complain of the time of the notice. They made their election to proceed after they knew their option and are bound by that election.

## II Directed Verdict

Appellants argue at length that under Maryland law, their motion for a directed verdict should have been granted; as we have held, the case is governed by Virginia law and the contention is now moot. They argue further, however, that even under the Virginia law a verdict should have been directed in their favor. They cite the applicable statute, *Code of Virginia,* § 46.1-173, which requires a motorist to stop at a stop sign but is silent as to any duty to yield the right of way. To support their argument they cite two cases. The first, *White v. Hunt,* 209 Va. 11, 161 S.E.2d 809, where the Court applied an ordinance of the City of Norfolk, which like the Maryland statutes requires that a motorist at such an intersection must stop and yield the right of way. The second case they cite is *Kelley v. Henley,* 208 Va. 264, 156 S.E.2d 618, which involved a public road and a private driveway; such an intersection is controlled by another section of the Virginia Code requiring that a motorist stop and yield the right of way. In both cases the Supreme Court of Virginia indicated that in a boulevard situation, such as the instant case, the question of negligence was usually one for the jury. See *Harvey v. Chesapeake and Potomac Telephone Company of Virginia,* 198 Va. 213, 93 S.E.2d 309, in which the Court, in a

boulevard case, approved the following instruction as an appropriate statement of Virginia law: "The Court instructs the jury that the defendant, Phillips, after stopping at the intersection of Cherokee Road and State Route 147, had a right to proceed and turn into State Route No. 147 under such circumstances that a reasonably prudent person so situated would have concluded that it was reasonably safe to do so, acting under the assumption unless and until the contrary appeared that the drivers of oncoming cars would themselves obey the law and keep their cars under proper control." The argument that the trial court should have granted a directed verdict in favor of the appellants is without merit.

### III Instructions

Appellants attack the court's instructions concerning last clear chance under the Virginia law. Although the appellee objected to the last clear chance instruction below, the appellants made no objection and appellants' contention is therefore not before us. Md. Rule 554 d and e.

After the court had completed its instructions to the jury, the appellee stated, "Of course, we take exception to the instruction, the contributory negligence instruction stated before. We take exception to Instruction No. 29, dealing with negligence per se." The Court of Appeals has ruled that only objections made after the instructions are given can be considered on appeal. *Ritterpusch v. Lithographic Plate Service, Inc.,* 208 Md. 592, 119 A. 2d 392. Obviously the reference to the contributory negligence instruction is insufficient for us to rule on it. Both the Court of Appeals and this Court have held that reference to a number of a requested instruction is not sufficient objection to have the matter considered on appeal. *Jones v. Federal Paper Board Company,* 252 Md. 475, 250 A. 2d 653; *Podolski v. Sibley,* 12 Md. App. 642, 280 A. 2d 294. Neither does the reference to the subject matter of Instruction No. 29 make clear the basis of the objection. We therefore, have no authority to consider any objections to the instructions under Md. Rule 554 e,

For whatever comfort it may be to the appellants and their counsel, we will state that we have examined the instructions with care and would not find reversible error if we were permitted to review them.

## IV Admission of Photographs

Appellants argue that reversible error was committed because five photographs were admitted into evidence over objection. The nub of the appellants' objection is that between the time of the accident and the time the photographs were taken, a traffic light was installed and part of the intersection had been widened. To support their argument that the admission of the photographs was improper, they cite *Consolidated Gas Company v. Smith*, 109 Md. 186, 72 A. 651; *Corens v. State,* 185 Md. 561, 45 A. 2d 340; *Pearson v. State,* 182 Md. 1, 31 A. 2d 624 as well as other cases. In none of the cases cited, nor in any that have come to our attention, has the appellate court reversed the trial court for the erroneous admission or rejection of photographs. Admission of such evidence is in the discretion of the trial judge and is not open to review unless plainly arbitrary. *Snowden v. State,* 133 Md. 624, 631, 106 A. 5. In the instant case the changes between the time of the accident and the time the pictures were taken were clearly pointed out to the jury; we see no prejudice. We could not have found reversible error had the trial judge excluded the photographs, neither can we find reversible error because they were admitted.

*Judgment affirmed.*
*Appellants to pay the costs.*