MARION G. DINSMORE, Trading as T. M. Dinsmore & Company,

*vs.*

## LOUIS SACHS.

*Subrogation: when remedy invoked; not against co-sureties.*
*Equity: contractual rights and obligations.*

Subrogation is a peculiar feature of equity, not founded on a contract but having its origin in natural justice.           p. 436

It is upon the theory of substituting, as against a principal debtor, the party who has intervened to protect the creditor and has paid the debt that was due.           p. 437

The doctrine is not limited in its operation to the relation of formal suretyship, but is applied to all persons upon which there is a fixed liability, whether surety, indorser, acceptor or grantor, to pay a debt which was due and which the principal debtor ought to pay.           p. 437

But this remedy is available only against the principal debtor, and can not be utilized as against co-sureties.           p. 437

The principle of subrogation can not be availed of as against the counter-security given to the surety on a bond in an attachment case, where such surety had become insolvent and never, in fact, made any payment on account of the attachment bond.
          p. 437

A court of equity can not disregard the express provisions of a contract, nor can it impose upon parties a new liability that they had not contracted for.           p. 438

*Decided January 14th, 1919.*

Appeal from the Circuit Court of Baltimore City. (DUFFY, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, URNER and STOCKBRIDGE, JJ.

*George Washington Williams* (with whom was *John Holt Richardson* on the brief), for the appellant.

*William Curran,* for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

There is but a single question presented in this case, and that not one of special difficulty. It is whether the plaintiff, Marion G. Dinsmore, is entitled to be subrogated to the rights, if any, of the Illinois Surety Co. against Louis Sachs, under the circumstances of this case.

Counsel upon both sides have filed full briefs, with quite an extended citation of authorities, which in the view of this Court and in consonance with its decisions, do not call for any extended review or even enumeration. These have all been examined, but the separate consideration of each one would protract this opinion far beyond what is necessary.

The Circuit Court of Baltimore City on demurrer to the bill of complaint filed by Dinsmore against Sachs, sustained a demurrer to and dismissed the bill, and it is from that action that this appeal has been taken.

The facts as they appear in the bill are that the plaintiff, Dinsmore, who was engaged in the hay, grain, flour and cement business at Canton, Baltimore County, had sold to a certain Michael Westerman a considerable quantity of goods, aggregating in value $566.47; that in April, 1915, suit was entered in the Circuit Court for Baltimore County for the

recovery of that account, and after suit had so been brought it was ascertained that all of the cows, horses, wagons, harness, cans, chattels and stock of Westerman had been conveyed by way of chattel mortgage to Hyman Pachino, a brother-in-law of said Westerman, upon the discovery of which the plaintiff caused to be issued an attachment on original process for fraud against the goods and chattels so purporting to have been conveyed. Upon the levy of the attachment the defendant, Westerman, filed a bond to dissolve the attachment, and on which bond the Illinois Surety Company was the surety.

The bill further alleges that the Surety Company, before giving the bond, required that Westerman should give the surety collateral security for the obligation which it had assumed in the giving of the bond, which security was given by a general bond of indemnity executed by Sachs to the Illinois Surety Company to protect and save it harmless against all suits, actions, damages, costs, judgments, etc., and any and all liabilities from any of said causes.

The short note case was tried and a judgment rendered in favor of Dinsmore in October, 1916, for the sum of $590.96, with interest and costs. Thereupon Westerman having failed to satisfy the judgment, payment was demanded of the Illinois Surety Company, when it was discovered that that company had become insolvent and placed in the hands of receivers, and accordingly this bill was filed, asking that the plaintiff may be subrogated to the rights of the Illinois Surety Company against Sachs, by reason of the indemnity bond given by him to the Illinois Surety Company.

There is no pretense or claim that there was any contractural relation between Dinsmore and Sachs. The chief reliance of the plaintiff is upon statements, such as is found in *Orem* v. *Wrightson,* 51 Md. 43, to the effect that subrogation is a peculiar feature of equity, not founded on contract, but having its origin in a sense of natural justice. The same language, or its equivalent, may be found in many cases, and it was very fully considered in the case of *Wallace* v. *Jones,*

110 Md. 143; where an indorser of a promissory note paid a judgment obtained on the note, and was held entitled to be subrogated to the rights of the creditor. In every instance where subrogation has been permitted, it is upon the theory of substituting as against the principal debtor the party who has intervened to protect the creditor, and has paid the debt which was due.

The doctrine is not limited in its operation to the relation of formal suretyship, but it applies in full force to the situation of all persons upon whom there is a fixed liability, whether as surety, indorser, acceptor or guarantor to pay a debt which the principal debtor ought to pay. *Pomeroy's Equity,* Vol. 6, secs. 912, 921. But this special remedy is one which is available only against the principal debtor, and can not be utilized as against co-sureties. *Fuhrman* v. *Fuhrman,* 115 Md. 443.

So even if the Illinois Surety Company is to be regarded in this instance as the principal debtor, the remedy of subrogation would not be available to the plaintiff against Sachs, who was not even a co-surety, but at most was simply under a contractural obligation to refund to the Illinois Surety Company any money which it should have been required to pay by reason of the obtention of the judgment against Westerman, and in this case it does not appear that the Illinois Surety Company has ever paid, or been adjudged liable for the amount of the judgment rendered in favor of Dinsmore against Westerman.

A full and complete discussion of the origin and scope of the doctrine of subrogation will be found in the case of *Poe et al.* v. *Philadelphia Casualty Co.,* 118 Md. 347. While that case arose out of an insurance policy, JUDGE PEARCE in speaking for this Court dealt with the entire subject of subrogation, and the circumstances under which it might be successfully invoked, and in accordance with the principles there stated it is entirely clear that the ruling of the lower Court in the present case was correct.

In *Cushman* v. *Carbondale Fuel Co.*, 98 N. W. Rep. 509, the effort was made to have the Court extend the application of the doctrine of subrogation, and it was there held, that "a Court of Equity can no more disregard the express provision of the contract than could a Court of law, and neither can make a new contract for the parties which would impose a liability not contracted for."

While the right of subrogation is not a creature of contract, it is, nevertheless true that the right can not be so extended as to bring within its operation one whose obligation was contractural merely. The decree appealed from will accordingly be affirmed.

*Decree affirmed, with costs.*