STATE, USE OF BOWMAN *v*. WOOLEYHAN
TRANSPORT COMPANY

[No. 128, October Term, 1948.]

*Decided March 31, 1949.*

688

The cause was argued before DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*J. Lee Smith* and *Robert B. Kelm* for the appellant.

*Paul M. Higinbothom* and *Paul R. Kach* for the appellee.

COLLINS, J. delivered the opinion of the Court.

This is a suit by the State of Maryland for the use Violet L. Bowman, appellant, against Wooleyhan Transport Comany, appellee, for damages sustained by the equitable plaintiff, Violet L. Bowman, on account of the negligent killing of her mother, Ruth Gertrude Freno, by an automobile tractor and trailer owned by the appellee and operated by its agent.

A suit brought by the administrator of the estate of Ruth Freno against the appellee here for pain and suffering alleged to have been sustained by the deceased and for funeral expenses was jointly tried with the case now before us. A judgment was recovered for the plaintiff for $300 and costs. This was paid and no appeal taken from that judgment and that case is not before us here.

The suit now before this Court was brought under Article 67, 1939 Code, entitled "Negligence Causing Death". These sections more or less follow the English statute, 9th and 10th Victoria, Chapter 93, known as Lord Campbell's Act.

The trial judge granted appellee's "B" prayer "that there is no legally sufficient evidence offered by the Equi-

table Plaintiff to warrant the Jury in finding that the said Equitable Plaintiff sustained any pecuniary loss, actual or in expectation, from the death of her mother, and the verdict, therefore, must be for the defendant." The granting of this prayer is the primary question before us in this case.

The appellee contends that this question is not before us by reason of Sub-sections (c) and (d), of Rule 6. "Instructions to the Jury", of the General Rules of Practice and Procedure, pt. 3, subd. 3, Code, 1947 Supplement, page 2051. Sub-section (c) provides in part that before the jury retires to consider its verdict any party may object to any portion of any instruction given. An opportunity shall be given to make the objection out of the presence of the jury. Subsection (d) provides that upon appeal the party in assigning error in the instruction shall be restricted to the particular portion of the instruction distinctly objected to before the jury retires. The appellee contends that because no formal objection was made to the charge of the trial judge in court before he granted appellee's B prayer, *supra*, and withdrew the case from the jury the granting of that prayer is not reviewable by this Court. However, the record is accompanied by a certificate from the trial judge which states that after the close of the evidence and before the oral charge to the jury, the court and counsel for the parties retired to chambers to discuss the law of the case with regard to the written prayers filed by counsel. Among the prayers submitted was appellee's B prayer, *supra*. The court in chambers advised counsel that he intended to grant appellee's B prayer and to embody it in his charge to the jury. To this ruling the counsel for the appellant in chambers verbally objected on the ground that the evidence was legally sufficient. Thereupon the court resumed the bench and charged the jury. After the verdict was taken and at the suggestion of the court, appellant's counsel specially excepted to the directed verdict. The purpose of requiring the objection to any part of the charge to be presented to the trial judge before the jury

retires is to give the trial judge an opportunity to amend or supplement his charge if he deems an amendment necessary. *Fisher v. Baltimore Transit Co.*, 184 Md. 399, 402, 41 A. 2d 297. In the case before us the trial judge certified that the particular objection was made to him before he granted the prayer and delivered the charge to the jury, which he overruled. He specifically had the benefit of that objection before the jury retired. The only thing out of order in this case was the failure to have the stenographer in chambers to take down the objection. This was later formally done at the suggestion and with the approval of the trial judge. Rule 6, Sub-section (c) and (d), *supra,* did not contemplate the dismissal of an appeal under the circumstances in this case. The trial judge passed on the question, after objection, before the jury retired and the question is before us here.

In ruling on the demurrer prayer we will review the evidence in a manner most favorable to the appellant. The evidence shows that the equitable plaintiff, Violet L. Bowman, attended a public school in Baltimore for a period of two weeks. Being an albino, with poor eyesight, she was transferred to Overlea School for the Blind, from which she graduated after an attendance of ten years. She was married in 1934. Her mother, the deceased in this case, 57 years of age at the time of her death, had not lived with the daughter since 1934. Mrs. Bowman at the time of her mother's death had two children, one twelve years of age and the other six years old. Her husband, Charles John Bowman, was a sign painter whose shop was in the block next to his home. The daughter testified that her mother visited her home every day and when the mother was not working at times she cleaned the house for her, cleaned windows, took care of the children, "she took them places, when they had to go, she did washing, ironing for me, sewing and mending, and a lot of times she cooked for me and then she took me places, where it required going across the street or required taking buses or street cars or anything else that required sight." The daughter testified that the

mother worked regularly until November, 1946, mostly in canneries and packing houses. She claims that since her mother's death it has been necessary for her to hire a servant to perform the services the mother performed. The servant is paid $4.70 a day, two days a week, for working between the hours of nine and five. The daughter's sole support is from her husband who gives her the money with which she pays the servant. She says that on account of her financial circumstances it is impossible for her to employ the servant for more than two days a week and the servant does not render as much assistance to her as that furnished by her mother.

At the time of her death, in June, 1947, the mother was receiving funds from the welfare board and had received unemployment compensation all winter. The daughter claims that on account of her eyesight she could not clean well and could not fry fats. This had previously been done either by her mother or her husband. The daughter admits that shortly after her mother's death she freely and voluntarily signed the following statement which she had read and which at the trial below she said is correct. "Statement of Mrs. Violet L. Bowman, wife of Charles Bowman. I have two children, Richard, age 12, Lavina age 6. My husband is in the neon sign work and supports us. My mother, Ruth G. Freno, lived alone at 914 East Pratt Street. She was divorced from her husband, John Freno in Baltimore after the first war. For the past winter I had to help support my mother, I was the only child. She was on the welfare, too, only received one check. I would give her some food and once in a while I would give her a $1 and sometimes paid her rent $15 per month. I had not paid any rent for about 4 months. She did work last summer in a packing house, Footes, and Donevals I think. Her health was pretty good. She was 57 years of age. For the last winter, due to her age she had trouble getting work. The packing houses only open in the summer. Her eye sight and hearing was very good. This statement is true and cor-

rect." She further testified that sometimes twice a week she gave her mother $1 or $2.

Of course, a demurrer prayer should not be granted if there is any testimony of sufficient probative force and any inferences of fact fairly deducible therefrom to enable an ordinary intelligent mind to draw a rational conclusion therefrom in support of plaintiff's right to recover. If there is any evidence competent, pertinent and coming from a legal source, however slight, legally sufficient to prove the plaintiff's case, the demurrer prayer should be refused. *Miller v. Moose Lodge No. 358,* 179 Md. 530, 20 A. 2d 156; *Levin v. Cook,* 186 Md. 535, 47 A. 2d 505.

Article 67, Section 3, *supra,* limits actions in this case to the wife, husband, parent and child of the person whose death has been caused and provides that "the jury may give such damages as they may think proportioned to the injury resulting from such death to the parties respectively for whom and for whose benefit such action shall be brought". In this State the claim for damages, in cases under the statute now before us, is founded on pecuniary loss, actual or expected, suffered by the persons described in the statute. The maintenance of the suit is based on the pecuniary interest of the plaintiff in the life of the person killed. The question before us in this case is whether there was evidence legally sufficient upon which the jury could find that the daughter, Violet L. Bowman, suffered any pecuniary loss, actual or expected, by reason of her mother's death.

In the case of *Baltimore & O. R. R. Co. v. State, use of Martha E. Mahone,* 63 Md. 135, action was brought by a married daughter and two sons, all over the age of twenty-one years, for the death of their mother. In that case the deceased made her permanent home with the daughter. She attended to the house work and looked after the children while the daughter was away at work. These services on the part of the mother enabled the daughter to work out constantly and earn $6 a week. After her mother's death and at the time of the suit she had not

been able to do outside work because she had no one to take care of the house and the children. The Court pointed out that the statute limited the damages to what the jury thought was proportioned to the injury. Damages cannot be awarded for grief or mental suffering on the part of the deceased. The court said 63 Md. at page 146: "the claim for damages must be founded on pecuniary loss, actual or expected, suffered by the persons described in the statute. *Franklin v. R. R. Co.,* 3 Hurl. & Nor. 211." The court further pointed out that the right to maintain the suit was based on the pecuniary interest of the plaintiffs in the life of the person killed and the value of such interest is the measure by which damages are allowed and said: "The services rendered by the mother in this case is the pecuniary benefit which the daughter had a right to expect from the continuance of her mother's life." The value of such services was the measure by which the jury was to assess the damages and not what the daughter might earn by going out to work. This Court held that the trial court should have instructed the jury that in assessing the damages they were not to take into account the money earned by the daughter by her own labor, but that the damages were confined to the value of the services rendered by the mother, as if they had been rendered by any other person. In reference to the suit of the two sons, the mother, although she lived with the daughter, was in the habit of assisting in nursing members of their families when sick. The Court held that there was no proof of pecuniary benefit or pecuniary loss by the two sons and to attempt to assess damages under such circumstances would be to indulge in mere speculation, conjecture, and guess-work.

In *Elder v. Baltimore & O. R. R. Co.,* 126 Md. 497, 97 A. 65, L. R. A. 1916E, 712, suit was entered by three daughters and a son to recover damages for the death of their father. The three daughters were all married and lived with their husbands. The son, twenty-three years of age, lived at home with his father and worked on the farm tenanted by his father. The Court found that

694

the father paid him $200 a year for working on the farm. The son said the father also gave him additional money at various times when he asked for it. The father gave the daughters each year a sow or two shoats, and a turkey. The Court, citing *Baltimore & O. v. Mahone, supra,* repeated the principle that the claim for damages is founded on the pecuniary loss, actual or expected, suffered by the person described in the statute. This Court held that the three daughters were not in any sense dependent upon the father for support or maintenace but were cared for and supported by their respective husbands, and that the son did not suffer a loss of any pecuniary benefit. The occasional gifts made to them by the father did not show such a pecuniary interest as would enable them to recover. See also *Agriculture Mech. Ass'n. v. State,* 71 Md. 86, 18 A. 37, 17 Am. St. Rep. 507; *Employees Liability Assurance Corp. v. B. & O. R. R. Co.,* 173 Md. 238, 195 A. 2d 541, L. R. A. 1916E, note, page 182.

In this case we find that the mother did not live in the home with her daughter, as in the case of *B. & O. v. Mahone, supra,* but was employed a great part of the time elsewhere. The services rendered were those naturally rendered by an affectionate employed mother to her daughter. The daughter admitted that for the last winter of her mother's life she had helped to support her. She said at various times she had given her $1 or $2 a week and sometimes paid her rent in the amount of $15 per month. The daughter sustained no pecuniary benefit by reason of her mother's services as in the case of *B. & O. v. Mahone, supra.* The money paid to the servant after the mother's death was supplied by the son-in-law and, if there was any pecuniary loss by reason of the fact that it was necessary to employ a servant, that was the loss of the son-in-law and he is not such a person for whose benefit the statute was enacted. *Baltimore & O. v. Kelly,* 24 Md. 271, 281. The mother was on relief at the time of her death and being supported partly by her son-in-law. The daughter here had no actual pecuniary loss and no right to expect any pecuniary benefit from

the continuance of her mother's life. Although the death of the mother, without doubt, caused the daughter great grief and mental suffering, it might well have been a pecuniary benefit rather than a pecuniary loss, particularly as the mother had difficulty getting work due to her age. We do not believe the statute was intended to extend to remote benefits as in this case, or that the occasional services naturally rendered by this mother to her daughter from whom she received meals, money, food, and payment of rent at various times amount to such a pecuniary interest as the statute contemplated. To allow the jury to assess damages in this case would be allowing them to indulge in mere speculation. We are of opinion that the trial judge was correct in granting the demurrer prayer.

*Judgment affirmed, with costs.*