539 A.2d 239

The AETNA CASUALTY AND SURETY COMPANY

v.

HARTFORD ACCIDENT & INDEMNITY COMPANY.

HARTFORD ACCIDENT & INDEMNITY COMPANY

v.

SCHOENFELD INSURANCE ASSOCIATES, INC.

No. 859, Sept. Term, 1987.

Court of Special Appeals of Maryland.

April 6, 1988.

**540**

William V. Cerbone, Jr., Silver Spring (S. Kennon Scott, David C. Barclay and Hartman & Crain, Annapolis, on the brief), for appellant, Aetna.

Frank J. Vecella (Patricia F. O'Connor, Constance D. Burton, and Anderson, Coe & King, Baltimore, on the brief), for appellant/appellee, Hartford.

Thomas M. Trezise (Gary M. Burt and Semmes, Bowen & Semmes, Baltimore, on the brief), for appellee, Schoenfeld.

Argued Before WEANT, ALPERT and POLLITT, JJ.

POLLITT, Judge.

This case is the aftermath of a tragic accident occurring on 21 August 1979 in Ocean City, Maryland, in which Philip Rubin was fatally injured by an automobile driven by Steven Marc Cohen and owned by Sidney Herman Cohen. The Estate of Philip Rubin and his surviving parents sued the Cohens and obtained judgments against them in the amount of $702,000. Those judgments were affirmed by this Court in *Cohen v. Rubin*, 55 Md.App. 83, 460 A.2d 1046, *cert. denied*, 297 Md. 311 (1983). At the time of that accident, the vehicle involved was insured under a personal automobile policy issued by The Aetna Casualty and Surety Company (Aetna) to Sidney Cohen, which provided liability coverage of $300,000. Aetna defended the case on behalf of the Cohens and, after exhausting all appeals, paid the Rubins its policy limits of $300,000 plus accrued interest of $50,-958.58.

On 31 January 1985, the Cohens filed suit against Aetna, alleging Aetna's bad faith in refusing to settle that case for the policy limits when it had an opportunity to do so, thereby causing the Cohens to become individually liable for the excess judgment of $402,000.

Aetna filed a third party claim against Hartford Accident & Indemnity Company (Hartford) and Schoenfeld Insurance Associates, Inc. (Schoenfeld) for contribution and/or indemnification in the event that the Cohens prevailed in their bad faith claim against Aetna. In that third party claim, Aetna alleged that two policies of insurance issued by Hartford to the Cohens provided concurrent coverage for the claim of the Rubins. Both of the Hartford policies and the Aetna policy were issued to the Cohens through Schoenfeld, an independent agency alleged by Aetna to be the agent of both Aetna and Hartford. Aetna alleged that the Cohens notified Schoenfeld of the Rubins' claim shortly after the accident and that Schoenfeld failed to notify Hartford, thereby breaching Schoenfeld's duty owed Aetna. Hartford filed a cross-claim against Schoenfeld, asserting that if coverage existed under its policies, which it denied, then Schoenfeld had a duty to notify Hartford and failed to do so.

The case was tried before a Baltimore City jury in July of 1986. The jury found in favor of the Cohens against Aetna and awarded damages of $290,471. It found in favor of Hartford and Schoenfeld on the third party claims filed against them by Aetna. Pursuant to instructions from the court, it did not reach the cross-claim of Hartford against Schoenfeld. Subsequently, the court entered judgment for Schoenfeld on the cross-claim.

The Cohens appealed the adequacy of the verdict. Aetna appealed from the judgment in favor of the Cohens and from the judgments in favor of Hartford and Schoenfeld. Hartford cross-appealed from the failure of the trial court to grant its motion for judgment and from the judgment for Schoenfeld on Hartford's cross-claim. The Cohens and Aetna settled. The Cohens dismissed their appeal. Aetna

dismissed its appeal from the judgment for the Cohens, and dismissed its appeal from the judgment in favor of Schoenfeld. Remaining for our consideration are Aetna's appeal from the judgment for Hartford; Hartford's appeal from the failure of the trial court to grant its motion for judgment; and Hartford's appeal of the judgment for Schoenfeld on Hartford's crossclaim.

## The Appeal By Aetna

In its appeal, Aetna presents two issues:

1. Whether the trial court erred in admitting evidence regarding the interpretation and meaning of the terms of the Hartford policy and Hartford's intent in issuing the policy; and

2. Whether the court erred in its instructions to the jury regarding the principles to be applied in determining coverage under the Hartford insurance policy.

## I

In its third party claim against Hartford, Aetna alleged coverage under two policies. The first was policy number 30AB300297, issued by Hartford to Majestic Distilling Co., Inc., a business owned by Sidney Cohen, which policy had been listed on the police report of the fatal accident as providing coverage for the vehicle involved. That policy expressly excluded Steven Cohen from its coverage and Aetna abandoned any claim under that policy. The second policy, number 30GE301039, was issued by Hartford to "Sidney H. Cohen & Consumer Rent–A–Car t/a Wholesale Heaven." Aetna contends that the trial court erred in admitting extrinsic evidence to explain and determine the terms of that policy. It posits that "the parole [sic] evidence rule precluded the admission of extrinsic evidence ... where the terms of the policy were clear and unambiguous on its face." It contends that the policy unambiguously provided Cohen with personal liability coverage as well as business coverage. Hartford, with equal vigor, contends the policy unambiguously provided coverage solely for Cohen's garage business, known as "Wholesale Heaven." The

fact that each of them asserts the policy is unambiguous strongly suggests that the policy may well be ambiguous.

While it is well established that the parol evidence rule precludes the admissibility of extrinsic evidence to vary, alter or contradict a writing which is complete, unambiguous and valid in the absence of fraud, accident or mutual mistake, *Foreman v. Melrod*, 257 Md. 435, 263 A.2d 559 (1970), the rule is inapplicable to the facts of the case before us.

■ Where ambiguities exist as to the meaning of words or terms in the writing or to the application of them under the surrounding circumstances, extrinsic evidence is admissible for the purpose of clarifying the ambiguities. *Admiral Builders v. South River Landing*, 66 Md.App. 124, 128, 502 A.2d 1096, 1098 (1986). Over Aetna's objection, the trial court permitted oral testimony of Hartford's claims manager regarding the extent of coverage under the "GE" Garage Policy. The court also permitted the oral testimony of Schoenfeld regarding Sidney Cohen's intent in obtaining the Hartford policy.

The trial court's initial determination as to the need for extrinsic evidence is reviewed under the clearly erroneous standard of Rule 1086. *Admiral Builders, supra.*

> [A] trial court's conclusion that ambiguity exists in a writing is an exercise in judgment which should be overturned only if no reasonable suggestion of ambiguity can be entertained.
>
> Whether the court was "clearly erroneous" is an inquiry we answer not by re-examining the writing to see if *we* think it ambiguous; we review merely to determine whether the trial court's decision is based on evidence legally sufficient to support such a finding. [emphasis in original]

*Admiral Builders, supra*, 66 Md.App. at 128–29, 502 A.2d at 1099.

Furthermore, "in the initial determination of ambiguity, *vel non*, extrinsic evidence need not be excluded from the

trial court's consideration (so long as that evidence does not vary, alter, or contradict the plain meaning of the writing) because, until the evidence is heard, ambiguity or the lack thereof cannot be fully appreciated." *Admiral Builders, supra,* 66 Md.App. at 129, 502 A.2d at 1099. "In the event of an ambiguity in the terms of a contract, the courts must necessarily look to the intention of the parties at the time of the making of the contract." *Hardy v. Brookhart,* 259 Md. 317, 326–27, 270 A.2d 119, 125 (1970).

■■ Applying the test set forth in *Admiral Builders, supra,* we find there was a "reasonable suggestion of ambiguity" with regard to the insurance policy.

First, declarations in Hartford's policy state that it is a "Garage Policy" identified as No. 30 GE 301039. The named insured is Sidney Cohen & Consumer Rent-a-Car, Trading As Wholesale Heaven, 814 Ritchie Highway, Glen Burnie, Maryland. It designates the named insured's business as a "Non–Dealer," organized in the form of an individually owned business as opposed to a partnership or corporation.

Appellant argues that since the "Individual" designation is marked with an "X," the policy is thus an individual policy to Mr. Cohen, and as such, makes the policy unambiguous on its face, thus precluding the admission of extrinsic evidence. We are not persuaded.

■■ Emphasis should not be placed on a particular provision of an insurance policy, rather, the policy should be read as a whole to determine its true import. *Simkins Ind., Inc. v. Lexington Ins.,* 42 Md.App. 396, 401 A.2d 181, *cert. denied,* 285 Md. 730 (1979). In the policy before us, Aetna focuses on the particular word "Individual" without due consideration to the entire provision and the entire declaration. As stated above, "Individual" pertained to the type of business organization and not the type of policy. The policy stated: "Form of Named Insured's Business: ☒ Individual ☐ Partnership ☐ Corporation ☐ Other." Furthermore, the

entire "Declarations" portion of the policy indicates that it was a business policy and not an individual policy. It expressly states that it is a "Garage Policy," designating a trade name as an insured and designating the insured's business as a "Non–Dealer."

Furthermore, Part IV—Liability Insurance section of the original policy reads as follows:

A. WE WILL PAY.

 1. We will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies caused by an accident *and resulting from garage operations.* [emphasis supplied]

The problem arises from the fact that an endorsement was incorporated into the policy which provided individual coverage to Mr. Cohen and members of his family. The endorsement outlines the type of personal injury protection, definitions as to who is insured and conditions for recovery —all of which are in the form of a personal insurance policy.

Based on these declarations, provisions and endorsements of the Hartford policy, we hold that there was legally sufficient evidence to support a finding of ambiguity as to the entire policy. Therefore, we find no error in the trial court allowing extrinsic evidence as to the extent of coverage provided by the policy.

### Jury Instructions

■ Aetna next asserts that the trial court erred in its instructions to the jury regarding the principles of insurance contract construction and notice. Hartford's response is that Aetna did not properly object to those instructions. Hartford asserts further that the instructions requested and denied either were incorrect statements of the law or were adequately covered by the instructions given. We

agree with Hartford that the objections were not preserved for our review.

Rule 2–520(e) provides, in pertinent part:

No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection.

After instructions were given, Aetna noted its objection to several instructions given at the request of the Cohens. It then started to state its objections to the failure of the court to grant certain instructions proposed by it. Counsel inquired whether "all of our proposed instructions are a part of the record in this case?" He said:

[T]he purpose for my question is to know what to review, what the other proposed instructions of other counsel have given you their proposed numbers, and if it's part of the record, I'm not going to do that.

The trial judge responded, "Well, it's up to you," and stated that all instructions requested by all parties were filed in the case as exhibits. Counsel then said:

Aetna objects to the failure of the Court to grant Aetna's proposed instructions 8, 10, 11, 12, 14, 16, 17, 18, 19, 20, and 23.

And the reasons for my objections are the same as to each, each, of these proposed instructions properly stated the law of the State of Maryland as it relates to facts presented in this case, and the issues in this case, failure to grant them is prejudicial to Aetna's rights and prevents the jury from hearing the law of the State on issues relative to proceedings.

Discussing former Rule 554, the predecessor to Rule 2–520, in *Whaley v. Maryland State Bank*, 58 Md.App. 671, 678, 473 A.2d 1351, 1355 (1984), we said:

A mere reference to the number of a requested instruction which the trial court has declined to grant is not a sufficient compliance with section d of the rule to permit

review of the instructions. *Jones v. Federal Paper Bd. Co.*, 252 Md. 475, 250 A.2d 653 (1969); *Bauman v. Woodfield*, 244 Md. 207, 223 A.2d 364 (1966); *Shafer v. Bull*, 233 Md. 68, 194 A.2d 788 (1963); *Belt's Wharf v. Internat. Corp.*, 213 Md. 585, 132 A.2d 588 (1957); *Morris v. Peace*, 14 Md.App. 681, 288 A.2d 600 (1972); *Podolski v. Sibley*, 12 Md.App. 642, 280 A.2d 294 (1971).

The obvious purpose of the rule is to give the trial judge an opportunity to correct or add to his instructions. *Wash. Sub. San. Comm. v. Musgrove*, 203 Md. 231, 100 A.2d 27 (1953). The rule demands clarity and particularization both in the assignment of error and the reasons therefor. *Nesbitt v. Bethesda Country Club*, 20 Md.App. 226, 314 A.2d 738 (1974). A single objection to the court's failure to include within its instructions eleven separately numbered requests, the stated reason being only that such failure is "prejudicial," does not comply with either the letter or the spirit of the Rule. Aetna, in its reply brief, appears to concede this is generally true. It asserts, however, that under the particular facts of this case, there was substantial compliance with the Rule so as to preserve the question for our review. We disagree.

In *Whaley v. Maryland State Bank, supra,* we recognized that:

> In *Sergeant Co. v. Pickett*, 283 Md. 284, 286–287, 388 A.2d 543 (1978), however, the Court of Appeals held that an exception to the failure of the trial court "to instruct the jury on plaintiff's requested instruction ... [number] ten, unavoidable [sic] consequences" sufficiently complied with sections d and e of Rule 554. But there the trial judge, by stating that he did not think that particular requested instruction was applicable to the case, clearly indicated that he understood the precise point being asserted and rejected it out of hand. In this case the record does not make clear "that all parties and the court understood the reason for the objection." *Id.* at 288–289, 388 A.2d 543, quoting *Exxon Corp. v. Kelly*, 281 Md. 689, 694 n. 6, 381 A.2d 1146 (1978).

58 Md.App. at 678, 473 A.2d at 1355 (bracketed material in original).

As was true in *Whaley*, the record here is devoid of any comment by the trial judge at the time the objections were noted which would indicate that the judge was fully aware of the "precise point being asserted and rejected it out of hand." That Aetna had submitted "written requested jury prayers to the court, supported by citation to the applicable law," does not demonstrate, as Aetna suggests, that the court was so aware, any more than that same fact did in *Whaley*. Neither do we find support for Aetna's position in the facts that its theories had been argued to the court during presentation of arguments on motions earlier in the trial or during its repeated objections to the admission of extrinsic evidence. Exceptions taken to the admissibility of evidence not restated as objections after the instructions are given, are not available on appeal as objections to the instructions. *Duvall v. Potomac Electric*, 234 Md. 42, 48, 197 A.2d 893, 896 (1964). Finally, Aetna suggests the objections were adequate because the judge had directed all counsel to state their exceptions "by number" and to "try and be brief." We do not interpret the court's comments as suggesting that a mere reference to the requests by number would constitute adequate objection. The court invited counsel to state "[a]nything else you want to say," and at least one counsel, whose exceptions are not before us, responded to the court's invitation by saying, "I'll be brief as I can *in keeping with the rules*," and proceeded to note objections in substantially more detail than were those noted by Aetna. We hold that Aetna's objections to the instructions are not preserved for our review.

Assuming *arguendo* that the objections were properly preserved, and assuming further that the instructions may not have been as complete as they could have been, such error, if any, was not prejudicial because, for the reasons hereinafter stated, Hartford's motion for judgment should have been granted as a matter of law.

## II

### Hartford's Cross–Appeal

In its cross-appeal, Hartford asserts several reasons why its motion for judgment should have been granted as a matter of law. They can be summarized in two.

1. That Hartford was entitled to judgment because there was no coverage as a matter of law.

2. That Hartford was entitled to judgment because Aetna failed to establish a proper third party claim of subrogation.

Since we have previously determined that the insurance policy in question was ambiguous and, therefore, was properly presented to the jury for its determination as to coverage, we must reject Hartford's first assertion. However, we agree with Hartford's second position.

In its Amended Third Party Claim, Aetna pled the following:

8. Hartford owed its insureds, Sidney Herman Cohen and Steven Marc Cohen, a duty to defend them in the action filed against them by the Rubins and was obligated to indemnify them for any judgment entered against them in said action.

9. Aetna has demanded contribution from Hartford for payment of the verdict against the Cohens.... [and] Hartford ... refused to extend coverage to the Cohens....

10. ... The Hartford's refusal to indemnify the Cohens for the verdict entered against them is unlawful, wrongful and without justification.

\* \* \* \* \* \*

12. Any verdict entered against Aetna in this case is a direct result of Hartford's wrongful refusal to extend coverage to the Cohens for the August 21, 1979 accident.

WHEREFORE, the Third–Party Plaintiff, The Aetna Casualty and Surety Company, demands judgment of indemnification and/or contribution from the Third–Party

Defendant, Hartford Accident and Indemnity Company for all damages entered against it in this case.

While Aetna's complaint relied upon an indemnification/contribution theory of recovery, its memorandum in support of its third party claim against Hartford outlined the nature of its claim as "a subrogation theory; that is the equitable doctrine, recognized in Maryland, which permits one who is secondarily liable for a debt, and has paid it, to stand in the place of the creditor and benefit from all securities and remedies available to the creditor." It is this subrogation theory on which Aetna relied at trial.

 Since Aetna's memorandum supporting its third party claim alleged subrogation as the basis therefor, and since the allegations in the amended complaint could support a theory of legal or equitable subrogation (as opposed to conventional subrogation), we cannot find, as Hartford suggests, that Aetna's failure to plead legal subrogation in its formal complaint is fatal to its case. *See Schnader, Inc. v. Cole Build. Co.*, 236 Md. 17, 202 A.2d 326 (1964). We find, however, there was no evidence which supported Aetna's subrogation claim against Hartford under the facts of this case. Therefore, for the reasons set forth below, there was no legally recognizable third party claim properly before the court below, and the trial court erred in denying Hartford's motion for judgment.

Equitable subrogation arises by operation of law when a person pays the debt of another under such circumstances that equity entitles that person to reimbursement. *Fireman's Fund v. Continental Ins. Co.*, 308 Md. 315, 319, 519 A.2d 202, 204 (1987).

Essential to the resolution of the case before us is the fact that the suit arises from the Cohens' claim that Aetna failed to exercise due and reasonable care in attempting to settle a claim against the Cohens. As a matter of law, Aetna is not equitably entitled to reimbursement from Hartford on the Cohens' claim of a bad faith refusal to settle.

Rule 2–332 permitting third party claims requires that the third party claim be for all or a part of the plaintiff's claim against the original defendant for which the third party defendant is or may be liable to the original defendant. *Allen & Whalen v. Grimberg Co.,* 229 Md. 585, 185 A.2d 337 (1962). " 'The claim against the third-party defendant must be that of the original defendant but *it must be based upon the plaintiff's claim against the original defendant.' " Id.* at 589, 185 A.2d at 340 (emphasis supplied) (quoting with approval Barron & Holtzoff, *Federal Practice and Procedure* (Rules Ed., 1960) Vol. 1A, § 426); *see also White v. Land Homes Corporation,* 251 Md. 603, 248 A.2d 159 (1968).

> We think that this means that a third-party claim will lie in any case where it can be alleged that the third-party defendant is necessarily answerable to the original defendant should judgment be entered against him.

*White, supra,* 251 Md. at 609, 248 A.2d at 162. Therefore, only where the third party defendant would be liable to the original defendant for all or part of the plaintiff's recovery against the original defendant, is a third party claim properly before the court. In the case before us, we find that Aetna's third party claim fails to set forth facts under which, if proved, Hartford would be liable for all or part of the Cohens' claim. Aetna has failed to plead or present evidence which established a causal connection between Hartford's refusal to extend coverage to the Cohens and the Cohens' claim that Aetna wrongfully refused to settle. The record clearly demonstrates that the question of whether the Hartford policies provided coverage was not a consideration of Aetna's when it determined not to settle the claim against the Cohens.

Furthermore, "subrogation is an equitable doctrine and ... its operation at law is governed and controlled by the principles of equity." *Schnader, supra,* 236 Md. at 22, 202 A.2d at 330. In any subrogation case, the burden of proving entitlement is on the subrogee. *Security Ins. Co. v. Mangan,* 250 Md. 241, 242 A.2d 482 (1968).

At trial Aetna contended that it could recover under both a "conventional" subrogation claim and a legal subrogation claim.

The essential elements for legal subrogation are: 1) the existence of a debt or obligation for which a party, other than the subrogee, is primarily liable, which 2) the subrogee, who is neither a volunteer nor an intermeddler, pays or discharges the debt in order to protect his own rights and interests and under such circumstances as in equity entitle him to reimbursement to prevent unjust enrichment. *Maryland Title v. Kosisky*, 245 Md. 13, 225 A.2d 47 (1966); *Schnader, supra.* In the case before us, Aetna had not paid or discharged any obligation of Hartford to the Cohens in order to protect its own rights and interests. The basis for Aetna's obligation to the Cohens was not an alleged contract between the Cohens and Hartford. The basis of that claim was the negligence and bad faith of Aetna. Assuming there was coverage under the Hartford policy in question, it cannot be said that Hartford was *primarily liable* for the excess judgment when that excess is attributable to *Aetna's* negligent refusal to settle the claim in *Rubin v. Cohen.* Recovery under this theory is a special remedy which is "available only against the principal debtor, and can not be utilized as against co-sureties." *Dinsmore v. Sachs*, 133 Md. 434, 437, 105 A. 524, 525 (1919).

The theory of subrogation is invoked to prevent a third party primarily liable from being unjustly enriched when the subrogee pays its debt. *Security Ins. Co., supra*, 250 Md. at 247, 242 A.2d at 486. Yet, if Hartford is required to reimburse Aetna for the entire amount attributed to Aetna's refusal to settle, Aetna will then be unjustly enriched —a consequence which is in direct conflict with the equitable theory of subrogation.

Where the loss of a party who seeks to be made whole by subrogation arose from that party's own negligence, his negligence may be fatal to his subrogation claim. *Kosisky, supra.* "Since subrogation is an equitable doctrine, it will not be applied in circumstances where it would be ineq-

uitable to do so." *Finance Co. of Am. v. U.S.F. & G. Co.,* 277 Md. 177, 185, 353 A.2d 249, 254 (1976) (citing *Md. Trust Co. v. Poffenberger,* 156 Md. 200, 144 A. 249 (1929)).

■ Aetna's conventional subrogation claim fares no better than its legal subrogation claim. Its conventional subrogation claim is based upon a provision in its policy with Sidney Cohen which states:

In the event of any payment under the Liability Coverage ... Aetna Casualty shall be subrogated to all the Insured's rights of recovery therefor against any person or organization....

Pursuant to this provision, Aetna is subrogated to the Cohens' rights of recovery. But where the Cohens' claim is based solely on Aetna's negligence and bad faith, equity cannot condone Aetna's use of that basis for a claim against Hartford. Perhaps that is why Aetna's amended complaint contained no allegations of fact in support of this theory. Generally, equity will withhold subrogation from one who is guilty of a wrong in connection with the matter in controversy. 73 Am.Jur.2d, *Subrogation* § 13 (1974). That Aetna was guilty of bad faith in failing to settle the Rubins' claim is established by the final judgment against Aetna in favor of the Cohens, which judgment Aetna no longer challenges.

Because a "conventional subrogee is not necessarily entitled to subrogation as a matter of legal right if there are intervening equities," *Security Ins. Co. supra,* 250 Md. at 247, 242 A.2d at 486, we conclude that Aetna is precluded from asserting a subrogation theory against Hartford. We think it would be grossly inequitable for Hartford to be held responsible for a claim based solely upon the bad faith of Aetna.

### III

In view of these holdings, we need not address Hartford's "protective" appeal of the judgment in favor of Schoenfeld.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY
THE AETNA CASUALTY AND SURETY COMPANY.